Prichard v. Deering Harvester Co. 117 Wis. 97.

For the appellant there was a brief by *Harold Harris* and *T. M. Thorson,* and oral argument by *Mr. Harris.*

For the respondent the cause was submitted on the brief of *William N. Fuller.*

PRICHARD, Respondent, vs. DEERING HARVESTER COMPANY, Appellant.

*February 7—February 24, 1903.*

(1, 2) *Agency contract: Construction: Duty of agent to insure goods.* (3) *Appeal: Errors available: Motion for new trial.*

1. Plaintiff's contract with a harvester company, signed by him December 21, 1897, and accepted by the company February 8, 1898, provided that he should be the company's agent for the "entire season of 1898;" that he should hold all goods received by him, until sold and delivered, as the property of the company and as a special deposit for it, until it should be fully settled with; and that he should safely house or store and insure at his own expense all goods on hand at any time. On October 28, 1898, the company's traveling representative checked up plaintiff's accounts and stock on hand, and plaintiff gave a receipt

for such stock, "to keep and hold the same subject to the terms" of said contract. On January 10, 1899, before there had been a full settlement with the company under said contract, and before a new agency contract, signed by plaintiff, had become binding by acceptance, the goods in his possession were destroyed by fire while uninsured. *Held*, that the words "entire season of 1898" fixed only the term of plaintiff's agency, but did not limit the period during which he was bound to safely keep and insure the company's goods; and that he was liable for loss caused by his failure to have the goods insured at the time of the fire.

[2. What period of time is covered by the term "entire season of 1898" in such contract, not determined.]

3. Where errors, duly excepted to, appear in the proceedings prior to verdict and judgment, no motion for a new trial is necessary to make them available on appeal.

APPEAL from a judgment of the circuit court for Pierce county: E. W. HELMS, Circuit Judge. *Reversed.*

Action to recover back money paid by plaintiff to defendant upon an alleged mistake, under substantially the following facts:

On December 21, 1897, plaintiff, who had been defendant's agent during previous years, signed an agency contract, to become binding upon the defendant when accepted at the home office in Chicago, which was not done until February 8, 1898. Such contract provided that plaintiff should be defendant's agent for the "entire season of 1898," and required him to "hold all goods shipped or received, until sold and delivered, and the entire proceeds of all sales as the sole property of said *Deering Harvester Co.* and as a special deposit for it, until it shall be fully settled with. . . . To insure from loss or damage by fire, in a reliable company, by policy in the name of *Deering Harvester Co.*, at expense of said agent, all of said company's goods on hand at said agency at any time, for at least three fourths of the net price while in his or their custody," and to "safely house or store . . . all goods on hand at any time." On October 14, 1898, a traveling representative of the defendant checked up plaintiff's

accounts and stock on hand, and made a list of the latter, and plaintiff gave a receipt, entitled "Receipt for Unsold Goods on Hand," acknowledging the possession of said goods, that the same were unsold and unsettled for, and that he agreed "to keep and hold the same subject to the terms" of the aforesaid agency contract. About December 5, 1898, plaintiff, together with a traveling representative of the defendant, signed a new annual agency contract for the season of 1899—not to be binding upon the defendant until accepted by it at Chicago. There was some evidence that such acceptance never had taken place. On January 10, 1899, while the goods mentioned in the said receipt were still on hand, and while the balance due from plaintiff under the contract for the year 1898 was still unpaid, a fire occurred, without plaintiff's negligence, whereby all of said property was destroyed, to the value of about $725; there being no insurance thereon. Early in April, plaintiff entered into an agreement for compromise of his liability for failure to maintain insurance, and paid to the defendant the sum of $362.97 upon such compromise, and at the same time settled and paid the balance due upon the contract for the season of 1898 for goods sold but not paid for. Plaintiff testifies that at the time of making such settlement he supposed that the new agency agreement, signed December 5, 1898, was in force at the time of the fire, and that he was liable thereunder, and that he did not learn until some time in the following summer that the company had never approved that contract and had never considered it in force.

At the close of the evidence the defendant moved for a direction of a verdict, which was overruled, and the case was submitted to the jury upon the theory that plaintiff would not have been liable for failure to insure unless a new contract for the season of 1899 had been made before the fire, and therefore would be entitled to recover if he, in the exercise of due care, mistakenly supposed, at the time of the making of

the payment, that such contract had become valid and bind-
ing. Under this instruction the jury found a verdict in his
favor for the amount paid, with interest thereon, $420, for
which judgment was rendered in his favor; from which de-
fendant appeals.

*A. Combacker,* for the appellant.

For the respondent there was a brief by *Walter C. Owen*
and *F. M. White,* and oral argument by *Mr. Owen.*

Dodge, J. The question upon which recovery was made to
depend in the trial court, namely, whether plaintiff mistak-
enly believed that at date of the fire a new contract existed,
covering the season of 1899, was material only in case plaint-
iff's liability to maintain insurance depended upon the fact
so believed in. If he owed that duty otherwise, the mistake
as to existence of the new contract certainly cannot be con-
clusively presumed to have induced him to compromise and
satisfy the damage resulting from breach of such duty. The
court expressly instructed the jury that plaintiff would not
have been bound to maintain insurance if the new contract
had not been finally accepted prior to January 10, 1899. Ap-
pellant contends that respondent was so bound by the con-
tract for the "entire season of 1898." If so, all other sub-
jects of discussion become immaterial. We therefore pro-
ceed to consider that document. By its terms, all goods re-
ceived by respondent remain the property of the company,
and he agrees to hold them "as a special deposit for it, until
it shall be fully settled with." The evidence certainly did not
show conclusively that at the time of the fire these goods had
been sold and delivered, nor that the company had been fully
settled with. They were, therefore, in respondent's hands
as a special deposit for appellant. We cannot doubt that they
were "company's goods on hand," within the paragraph of
the contract requiring maintenance of insurance. Every rea-
son for the latter requirement would indicate identity be-

tween the goods which were to remain the company's property on special deposit, and those which must be kept insured in its name. Neither can we doubt that the duty to insure was commensurate in time with the duty to hold the goods as special deposit. This term, according to the words of the contract, runs until the goods are delivered, and would therefore *prima facie* require maintenance of insurance so long as they remained in respondent's possession.

The circuit court seems, however, to have considered that these plain words were overcome in some way and some other limit to plaintiff's duty prescribed. Respondent's counsel seems to deduce such result from the provisions of the first paragraph of the contract, whereby plaintiff is appointed agent for "the entire season of 1898." The argument is faulty in more respects than one. Thus, the period of time covered by the "entire season of 1898" is not very certain. Does that mean merely until the season for selling harvesters and mowers is over, or until the next annual season commences? From our general knowledge of such agency contracts, and from matters appearing in the evidence and the correspondence, the latter seems the more probable meaning. We find correspondence and dealings between these parties indicating a mutual understanding that plaintiff was the local representative of defendant at dates remote from the harvest season; and it is, we believe, customary with farm implement dealers to maintain local agencies the year round, accessible for information, for obtaining extra parts, and the like; also for keeping of machines and extras left over after harvest, instead of reshipping the same to the factory. If the words in question were intended to cover a period of a year, or until agency contract for 1899 should be perfected, of course the loss occurred within the term, for the contract did not take effect until February 8, 1898, and its year had not expired. But whatever the significance of these words, they, at most, serve only to prescribe the term of plaintiff's agency, and do

not expressly limit the period during which he agrees to safely hold the goods and maintain insurance. It is entirely consistent that, in consideration of his employment as agent for a shorter period, plaintiff should agree to safely keep and insure all goods until delivered up to his principal, and we cannot think the plain words of the contract to that effect are overcome by prescribing the season of 1898 as the term of the agency. That the parties did not understand them to be so limited is plainly shown by the acknowledgment given October 28, 1898, long after harvest, specifying the goods then remaining, and agreeing to keep and hold the same *under the terms of the agency contract.*

We are satisfied that the true construction of the existing contract required plaintiff to maintain insurance upon the defendant's goods in his possession January 10, 1899, and therefore that the circuit court erred in instructing the jury that no such duty rested on him unless the new contract had been completed before that date, and that he might recover back if he paid on mistaken supposition of such completion. For the same reasons, we must hold that error was committed in denying defendant's motion to direct a verdict in its favor.

Inasmuch as these errors, with due exception, appear in the proceedings prior to verdict and judgment, no motion for a new trial was necessary to make them available on appeal, and we need not consider some questions of practice which are raised upon the sufficiency of that motion and mode of its disposal.

*By the Court.*—Judgment reversed, and cause remanded for new trial.